<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| J.T., o/b/o J.T. | Civil Action No. 2:12-cv-03566 |
|             Plaintiffs, | (SDW) (MCA) |
|     v. | |
| NEWARK BOARD OF EDUCATION, | **OPINION** |
|             Defendant. | April 5, 2013 |

**WIGENTON**, District Judge.

Before this Court is Newark Board of Education's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Also before this Court is J.T. o/b/o J.T.'s cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction, pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's motion.

## I.    PROCEDURAL HISTORY

On October 27, 2011, Plaintiff J.T. ("J.T. Sr.") filed a Petition for Due Process against the Newark Board of Education ("Board"), alleging that its refusal to institute a Resource In-Class Support ("RCI") program in the Speedway Avenue School ("Speedway") denied Plaintiff's daughter, J.T., a Free and Appropriate Public Education (FAPE). (*See* PA 1-7.) On December 20, 2011, the matter was transferred to the Office of Administrative Law ("OAL"). (*See* PA 66.) On January 3, 2012, the parties agreed to determine the matter by way of summary disposition,

on stipulated facts.  (*See* PA 67.)  A Joint Stipulation of Facts and Legal Issues to be Decided

was filed on January 31, 2012, and oral argument was held before Administrative Law Judge

Robert J. Giordano ("ALJ") on February 24, 2012.  (*See* PA 16, 67, 78-198.)  On March 19,

2012, the ALJ issued a final decision in favor of Defendant.  (*See* PA 66-76.)

On June 13, 2012, Plaintiff filed a complaint in this Court seeking a reversal of the ALJ's

final decision and compelling Defendant to prepare an Individualized Education Program

("IEP") that states that J.T.'s now current educational placement is at Speedway, the school

closest to her home.  (*See* Compl. ¶ 28.)  Plaintiff alleges that the ALJ erred in: (1) failing to take

into consideration that Defendant did not deny it could provide the RCI program at Speedway

and simply chose not to, in violation of the Individuals with Disabilities Education Act

("IDEA"), (2) failing to take into consideration that Section 504 of the Rehabilitation Act of

1973 requires publicly funded schools to provide accommodations for disabled children, and (3)

failing to conclude that Defendant's actions violated Section 504 and the IDEA.  (*See* Compl. ¶

25-27.)  Plaintiff also seeks to recover legal fees and costs incurred from pursuing this case in the

OAL and in this Court.  (*See* Compl. ¶ 32.)

Plaintiff seeks summary judgment on the grounds that Defendant's refusal to implement

the IEP at Speedway violated the IDEA.  (*See* Pl.'s Br. Supp. Summ. J.)  Defendant seeks

summary judgment on the grounds that it has no obligation under the IDEA to implement the

IEP at Speedway.  (*See* Def.'s Br. Supp. Summ. J.)  The parties stipulated in their Joint

Stipulation that the narrow issue before the ALJ was whether the Newark School District's

compliance with the IDEA requires it to create a RCI program at Speedway as opposed to

requiring J.T. to attend another school.  Accordingly, the issue before this Court is whether the

evidence supports the ALJ's decision.

## II.   FACTS

J.T. was born August 2, 1999, and is a student at Speedway in the State-operated School District of the City of Newark.  (*See* PA 13.)  J.T. has been classified as having a disabling condition "Specific Learning Disability" and is eligible for special education and related services.  (*See id.*)  During the 2010-2011 school year, when J.T. was in sixth grade, she was placed in a "Pull Out Resource Program" for Language Arts, Reading, and Social Studies based on her IEP.  (*See* PA 13-14.)  Through this program, J.T. received instruction from a special education teacher in a separate setting in the aforementioned subjects, and received regular instruction in a general education classroom for the remaining subjects.  (*See* PA 14.)  On March 1, 2011, a new IEP was developed, which was to run for the remainder of the 2010-2011 school year until February 28, 2012 of the 2011-2012 school year.  (*See* PA 14, 18.)  J.T. Sr. participated in the IEP meeting and agreed on the IEP decision.  (*See* PA 20, 40.)  J.T. was to be placed in a RCI program.  (*See* PA 13-14, 40.)  Under this new program, J.T. would still receive instruction from a special education teacher, but her instruction would take place in a general education classroom, where all or most of the other students are not disabled or classified.  (*See* PA 14, 40-41.)  The purpose of this new program was to have J.T. "mainstreamed" into the general education classroom, so that she could be educated with the general class while receiving special education in that setting.  (*See* PA 41-42.)

On or about September 9, 2011, the Newark Public Schools Office of Special Education notified J.T. Sr. that in order for J.T. to receive a RCI program, J.T. must be placed either at the Alexander Street School, or the Camden Street School.  (*See* PA 14, 37.)  These schools are approximately 0.8 miles and 1.2 miles respectively from J.T's home.  (*See* PA 13-14.)  Absent the need for a RCI program, J.T. would likely attend Speedway, which is approximately 443 feet

away from her home.  (*See* PA 13.)  Despite being advised that a RCI program was unavailable

at Speedway, J.T. Sr. objected to the proposed placements and continued to send J.T. to

Speedway.  (*See* PA 15.)  J.T. has therefore not received a RCI program, which is available at the

Alexander or Camden Street Schools, since September 2011.  (*See* PA 15.)

## III.    LEGAL STANDARD

"New Jersey employs the one-tier administrative system, under which due process

hearings are conducted before an administrative law judge of the New Jersey Office of

Administrative Law."  *D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. 457, 472 (D.N.J. 1997)

(citing *Lascari v. Bd. of Educ. of Ramapo Indian Hills Reg'l High Sch. Dist.*, 560 A.2d 1180,

1185 (N.J. 1989)).  Once an administrative law judge makes a determination in a due process

hearing, any party has the right to appeal either in state court or federal district court.  *See id.* at

1184.  The reviewing court "shall receive the records of the administrative proceedings; shall

hear additional evidence at the request of a party; and basing its decision on the preponderance of

the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. §

1415(i)(2)(C)(i)-(iii) (2006).

When considering an appeal from a state administrative decision under the IDEA, district

courts apply a nontraditional standard of review, sometimes referred to as "modified *de novo*"

standard of review.  *See P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727,

734 (3d Cir. 2009) (quoting *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 269-70

(3d Cir. 2003)).  Under a modified *de novo* review, a district court must give "due weight" and

deference to the ALJ's findings.  *See S.H.*, 336 F.3d at 260.  The ALJ's factual findings are

considered "prima facie correct"; and where the reviewing court does not adhere to those

findings, it must explain why.  *See id.; see also Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d

583, 591-92 (3d Cir. 2000); *D.R. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 898 (3d Cir. 1997); *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 527 (3d Cir. 1995).

Furthermore, when an ALJ has heard live testimony and has determined that one witness is more credible than another witness, the ALJ's determination is due special weight. *See Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004); *Carlisle Area Sch.*, 62 F.3d at 527-29.  "Specifically, this means that a District Court must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion.'"  *Id.* (quoting *Carlisle Area Sch.*, 62 F.3d at 529).

Under a modified *de novo* review, a district court is authorized to make findings based on the preponderance of the evidence and grant the relief it deems appropriate, including an award of attorney's fees, a requirement for reimbursement for a private educational placement, and a direction for the provision of a compensatory education.  *See A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 802 (3d Cir. 2007) (en banc); *Fuhrmann ex rel. Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1034 (3d Cir. 1993).

Regarding the burden of persuasion when appealing an administrative decision at the district court level, the Third Circuit has recently held that the burden of persuasion as to each claim being challenged falls on the party that is challenging the administrative decision.  *See Ridley School Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012).

## IV.   DISCUSSION

### a.   *Relevant Law*

The IDEA, 20 U.S.C. §§ 1400-87 (2006), ensures that all children with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent

living, and ensures that the rights of children with disabilities and parents of such children are protected.  *See* § 1400(d)(1)(A)-(B); N.J. Admin. Code § 6A:14-1.1 (West 2011).  A "child with a disability" includes children with intellectual disabilities, speech or language impairments, serious emotional disturbance, and specific learning disabilities, who, by reason thereof, need special education and related services.  § 1401(3)(A).  "Specific learning disability" refers to a disorder in one or more of the basic psychological processes involved in understanding or in using language (spoken or written), which may manifest itself in the "imperfect ability to listen, think, speak, read, write, spell or do mathematical calculations[,]" and includes such conditions as "perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia."  § 1401(30)(A)-(B).

States qualifying for federal funds under the IDEA must assure all children with disabilities the right to a FAPE.  *See* § 1412(a)(1); *Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982). Each district board of education is responsible for providing a system of free, appropriate special education and related services.  *See* N.J. ADMIN. CODE § 6A:14-1.1(d) (West 2011).  A FAPE means special education and related services that:

> (a) have been provided at the public expense, under public supervision and direction, and without charge; (b) meet the standards of the state educational agency; (c) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (d) are provided in conformity with the individualized education program required under 20 U.S.C. § 1414(d) [(2006)].

*See* § 1401(9); *Rowley*, 458 U.S. at 176.  Subject to certain limitations, FAPE is available to all children with disabilities residing in the State between the ages of three and twenty-one, inclusively.  *See* § 1412(a)(1)(A)-(B).

Under the New Jersey Administrative Code, an IEP is defined as "a written plan which sets forth present levels of academic achievement and functional performance, measurable

annual goals and short-term objectives or benchmarks."   N.J. ADMIN. CODE § 6A:14-1.3 (West 2011).   It refers to an "integrated, sequential program of individually designed instructional activities and related services necessary to achieve the stated goals and objectives.   This plan shall establish the rationale for [a] student's educational placement, [and] serve as the basis for program implementation . . . ."   *Id.*

At the beginning of each school year, a district must have an IEP in effect for every student who is receiving special education and related services from the district.   *See* N.J. ADMIN. CODE § 6A:14-3.7(a)(1) (West 2011).   Annually, or more often, if necessary, the IEP team shall meet to review and revise the IEP and determine placement.   *See* § 6A:14-3.7(i).   A FAPE requires that the education offered to a child be sufficient to "confer some educational benefit upon the handicapped child," but it does not require that the school district maximize the potential of disabled students commensurate with the opportunity provided to non-disabled students.   *Rowley*, 458 U.S. at 177, 200.   Hence, a satisfactory IEP must provide "significant learning" and confer "meaningful benefit."   *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000).

In accordance with the IDEA, children with disabilities are to be educated in the least restrictive environment ("LRE").   *See* 20 U.S.C. § 1412(a)(5) (2006); N.J. ADMIN. CODE § 6A:14-1.1(b)(5) (West 2011).   This environment is one that educates disabled children, to the greatest extent possible, together with children who are not disabled in the same school the disabled child would attend if the child was not disabled.   *Carlisle Area Sch.*, 62 at 535.   Special classes, separate schooling, or other removal of children with disabilities from the regular educational environment should occur only when the nature or severity of a child's disability is such that education in regular classes with the use of supplementary aids and services cannot be

achieved satisfactorily.  *See* N.J. ADMIN. CODE § 6A:14-4.2 (West 2011).  The Third Circuit has

interpreted this to require that a disabled child be placed in the LRE that will provide the child

with a "meaningful educational benefit."  *Kingwood Twp. Bd. of Educ.*, 205 F.3d at 578.  To

ensure placement in the LRE, a district board must ensure that consideration is given to:

> (i) [w]hether the student can be educated satisfactorily in a regular classroom with
> supplementary aids and services; (ii) [a] comparison of benefits provided in a
> regular class and the benefits provided in a special education class, and (iii) [t]he
> potentially beneficial or harmful effects which placement may have on the student
> with disabilities or other students in the class[.]

*See* N.J. ADMIN. CODE § 6A:14-4.2(a)(8) (West 2011). There is a presumption in favor of

placing the child in the neighborhood school if possible. *See Oberti v. Bd. of Educ.*, 995

F.2d 1204, 1224 n. 31 (3d Cir. 1993.)  However if this is not feasible, then a child's

placement should be as close to the home as possible.  *See id.* (citing *Barnett v. Fairfax*

*Cnty. Sch. Bd.*, 927 F.2d 146, 153 (4th Cir. 1991) (stating that 34 C.F.R. § 300.552 does

not impose an absolute obligation to place a child in a base school, but requires a school

district to take into account geographical proximity of placement), *cert. denied*, 502 U.S.

859 (1991)).

> b.  *ALJ's Findings*

The ALJ concluded that the proposed RCI program was less restrictive than the pull-out

program.  (*See* PA 74.)  The ALJ further concluded that Defendant had no requirement under the

IDEA to implement an RCI program at Speedway in order to provide a FAPE to J.T.  (*See* PA

75.)  The ALJ reasoned that a school district is permitted to centralize educational programs in

particular schools within a district, and is not required to provide a specific program at each

individual school.  (*See* PA 75.)  The ALJ relied on the fact that the proposed location for the

RCI program, the Alexander Street School, is within a "reasonable proximity" from Plaintiff's

home such that the proposed IEP does not violate the LRE requirement of the IDEA.  (PA 75.)

The ALJ thereby ordered that Defendant not be required to implement the RCI program at Speedway.  (*See* PA 76.)

        *c.  Parties' Arguments*

             i.   Plaintiff's Argument

Plaintiff's argument that the Board is obligated to implement an RCI program at Speedway has two bases, the first of which has two parts.  First, Plaintiff argues that the mainstreaming component of the IDEA requires the Board to place J.T. in Speedway because it is the same school she would attend if not for her learning disability. (*See* Pl.'s Br. Supp. Summ. J. 17 (citing *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 390 (3d Cir. 2006).)  Further, Plaintiff argues for the implementation of an RCI program at Speedway because Speedway is the closest school to J.T.  (*See id.* (citing N.J.A.C. § 6A:14-4.2(a)(g).)

Second, Plaintiff points to a "policy memorandum" issued in May 1999 by Barbara Gantwerk, the former director of the New Jersey Department of Education Office of Special Educations Programs (NJOSEP) on the subject of the IDEA's mainstreaming requirement.  (Pl.'s Br. Sup. Summ. J. 17-21.)  Plaintiff points to Gantwerk's summation of the NJOSEP requirements, where she states that "each placement option is examined not only as it currently exists, but also as it might be modified."  (*Id.* at 20.)  Based on this statement, Plaintiff argues that the Board ignored its responsibility to examine Plaintiff's placement option "as it might be modified" and thereby violated her right to be educated in the LRE.  (*Id.*)  In support of her argument that this Court should be guided by the policy memorandum, Plaintiff cites to *Klumb v. Bd. of Educ. Of Manalapan-Englishtown Reg'l High Sch. Dist., Monmouth County*, 199 N.J. 14 (2009) where the New Jersey Supreme Court stated that interpretations of statutes by agencies empowered to enforce them should be given substantial deference.  (*See id.* at 21-22 (citing

*Klumb*, 199 at 24).)  Plaintiff also cites to the case of *Ringwood Bd. of Educ. v. K.H.J.*, 469 F.

Supp. 2d 267, 270-71 (D.N.J. 2006), where the court relied upon a policy letter from the United

States Department of Education in issuing a ruling.  (*See id.* at 22-23.)  Based on these two

decisions, Plaintiff argues that the Board violated the IDEA, and that the ALJ erred in not

considering the policy memorandum.  (*See id.* at 24.)

ii.  Defendant's Argument

First, Defendant argues that Plaintiff has failed to satisfy her burden of persuasion and

therefore her case should fail as a matter of law.  (*See* Def.'s Br. Supp. Summ. J. 4.)  Next,

Defendant argues that there is no absolute right to be placed in the most conveniently located

neighborhood school, and cites to the language of the relevant statutes in support of this

argument.  (*See id.* at 5-7.)  Defendant argues that 20 U.S.C.A § 1412(A)(5)(a) and New Jersey

Administrative Code § 6A:14-4.2(a)(1),(7) only require that a student be educated "to the

maximum extent appropriate" with nondisabled peers in the school she would attend if not

disabled, "unless the IEP of a child with a disability requires some other arrangement."  (*Id.* at

6.)  Defendant further argues that under 34 C.F.R. § 300.552(a)(3), "where it has been

determined that a disabled student cannot be appropriately educated within her neighborhood

school due to her special needs, the requirement of a school district is merely to place the student

in an appropriate setting as close to home as possible."  (*Id.* at 6.)  Additionally, Defendant

contends that J.T.'s learning needs prevent her from obtaining an appropriate education at

Speedway since the RCI program model does not exist at that school, and that based on the

foregoing statutes, the IDEA allows placing her in a different setting that meets her needs.  (*See

id.* at 6-7.)

Finally, Defendant cites to Third Circuit and District of New Jersey case law in support of its argument that the LRE requirement of the IDEA does not require the Board to create an IEP at Speedway when such an IEP exists in other neighboring schools.  (*See id.* at 7-9. (citing *Kingwood Township Board of Education*, 205 F.2d 572 (3d Cir. 2000) and *G.A. and E.A. o/b/o/ M.A. v. Voorhees Township Bd. of Educ.*, 202 F. Supp. 2d 345 (D.N.J. 2002).)  Defendant also seeks to persuade this Court by relying on cases from other circuits, including the Fifth, Seventh, Eighth, and Tenth Circuits, that have all held that the LRE mandate allows school district boards to place students outside of their neighborhood schools when program supports require such a placement.  (*See* Def.'s Br. Supp. Summ. J. 9-11.)

    d.  *Analysis*

While it does not appear that the Third Circuit and District Court of New Jersey have decided a case that is factually similar to this one, the Third Circuit and the District Court of New Jersey have addressed issues similar to the one in this case.  In *Voorhees*, the board of education was not required to implement certain adaptations in order to allow a severely autistic student to remain in school within his neighborhood when an out-of-district appropriate program was available.  *See* 202 F. Supp. 2d 345 (D.N.J. 2002).  In *Kingwood*, the Third circuit stated that a district that did not have a preschool program was not required to initiate one in order to create an LRE for a disabled child.  *See* 205 F.2d 572, 579 (3d Cir. 2000.)  These cases support Defendant's argument that it is not required to institute a RCI program at Speedway.

Decisions from sister circuits are also instructive.  In *White ex rel. White v. Ascension Parish School Bd.*, the plaintiff argued that the only reason the school board claimed that neighborhood placement was not possible was because it elected to provide the services at a centralized location, and would not provide it at the plaintiff's neighborhood school.  *See* 343

11

F.3d 373, 380 (5th Cir. 2003).  The court however held that the school board's policy choice was permissible under the IDEA, and that "schools have significant authority to determine the school site for providing IDEA services."  *Id.*  The court further emphasized that "the proximity presence or factor is not a presumption that a disabled student attend his or her neighborhood school." *Id.* at 381.  Proximity is only one of many factors to be considered in determining a student's placement.  *See id.*   Finally, the court stated that "no federal appellate court has recognized a right to a neighborhood school assignment under the IDEA.[1]"  *Id.*  The Fifth Circuits' conclusion regarding the proximity of a disabled school placement echoes the court's decision in the *Oberti*.  *See Oberti*, 995 F.2d at 1224 n.31.  Accordingly, the ALJ was correct in finding for Defendant.

The "policy memorandum" relied upon by Plaintiff offers little persuasion to this Court in light of the decisions from the Third Circuit, the District Court of New Jersey, and other sister circuits.  The memorandum emphasizes the importance of the LRE requirement of the IDEA, but offers nothing in support of Plaintiff's argument. The ALJ appropriately disregarded it in reaching his decision.

---

[1] *McLaughlin v. Holt Public Sch. Bd. of Educ.*, 320 F.3d 663, 672 (6th Cir.2003) (LRE provisions and regulations do not mandate placement in neighborhood school); *Kevin G. by Robert G. v. Cranston Sch. Comm.*, 130 F.3d 481, 482 (1st Cir.1997) ("[W]hile it may be preferable for Kevin G. to attend a school located minutes from his home, placement [where full-time nurse located] satisfies [the IDEA].... [t]he school district has an obligation to provide a school placement which includes a nurse on duty full time, but it is not required to change the district's placement of nurses when, as in this case, care is readily available at another easily accessible school."); *Hudson v. Bloomfield Hills Public Sch.,*108 F.3d 112 (6th Cir.1997) (IDEA does not require placement in neighborhood school); *Urban v. Jefferson Cnty. Sch. Dist. R-1* 89 F.3d 720, 727 (10th Cir.1996) (IDEA does not give student a right to placement at a neighborhood school); *Murray v. Montrose Cnty. Sch. Dist.,* 51 F.3d 921, 928-29 (10th Cir.) (no presumption in IDEA that child must attend neighborhood school-proximity to home only one factor), *cert. denied,* 516 U.S. 909 (1995); *Schuldt ex rel. Schuldt v. Mankato Indep. Sch. Dist. No. 77,* 937 F.2d 1357, 1361-63 (8th Cir.1991) (school may place student in non-neighborhood school rather than require physical modification of the neighborhood school to accommodate the child's disability); *Barnett v. Fairfax Cnty. Sch. Bd.,* 927 F.2d 146 (4th Cir.) (school district complied with IDEA by providing deaf student with "cued speech" program in a centralized school approximately five miles farther than neighborhood school), *cert. denied,* 502 U.S. 859 (1991); *Wilson v. Marana Unified Sch. Dist. No. 6 of Pima Cnty.,* 735 F.2d 1178 (9th Cir.1984) (school district may assign child to school 30 minutes away because teacher certified in child's disability was assigned there, rather than move the service to the neighborhood school).

**V.    CONCLUSSION**

For the reasons set forth above, Plaintiff's motion is **DENIED**, and Defendant's motion

seeking affirmance of the ALJ's decision is **GRANTED.**


<u>s/Susan D. Wigenton, U.S.D.J.</u>


Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties